# Exhibit 35

Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
Tel: 212.309.6000
Fax: 212.309.6001
www.morganlewis.com

# Morgan Lewis
COUNSELORS AT LAW

Kenneth J. Turnbull
Partner
212.309.6055
kturnbull@morganlewis.com

June 23, 2009

**VIA FACSIMILE AND FEDERAL EXPRESS**

Rosa Vargas
Federal Investigator
U.S. Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street
New York, New York 10004-2112

Re:     Amy Bartoletti v. Citigroup Inc., EEOC Charge No. 520-2009-01886

Dear Ms. Vargas:

We submit this position statement on behalf of Citigroup, Inc. ("Citigroup" or the "Firm") in response to the above-referenced Charge of discrimination filed by Amy Bartoletti ("Bartoletti").[1]  Bartoletti, a former Director in the Housing Group of Citigroup's Public Finance Department in the Municipal Securities Division, alleges that the decision to include her in a November 2008 Reduction-In-Force ("RIF") was the result of intentional sex discrimination in violation of Title VII of the Civil Rights Act of 1964.  As detailed below, Bartoletti's allegations of discrimination are wholly without merit.

The decision to terminate Bartoletti's employment in November 2008 had nothing to do with her gender.  Rather, the Housing Group was being decreased in size and the area of the Housing business in which Bartoletti focused was becoming virtually non-existent.  Bartoletti's counterpart was retained because more than Bartoletti, he had experience and expertise that would allow the Housing Group to move forward and remain viable.  This legitimate business reason had nothing whatsoever to do with the fact that Bartoletti is a female.  Bartoletti's claim is

---

[1]     This position statement is being provided to the Equal Employment Opportunity Commission ("EEOC" or the "Commission") on a confidential basis.  Citigroup respectfully requests, therefore, that it only be used for the purpose of the EEOC's investigation of the above charge and that it not be disclosed to any person or entity other than the Commission and its investigators.  Citigroup expressly reserves the right to assert additional defenses in the future as may be necessary or appropriate.


**Morgan Lewis**
COUNSELORS AT LAW

Rosa Vargas
June 23, 2009
Page 2

also vitiated by the fact that the individuals who selected her for termination are the same individuals that chose her to co-Head the Housing Group just months earlier. Finally, Bartoletti's assertion that she was chosen for termination solely because she is a female is further belied by the fact that in the three previous RIFs, she was not selected. Had Citigroup wished to terminate Bartoletti's employment because she is a woman, it could have done so much sooner.[2]

For these reasons, as more fully explained below, Bartoletti's Charge should be dismissed in its entirety.

## I.    FACTUAL BACKGROUND AND ANALYSIS

### A.    The Firm's Commitment to Equal Employment Opportunity

Citigroup is a leading provider of financial services, employing approximately 300,000 individuals worldwide in more than 100 countries and territories. The Firm is an equal opportunity employer that prohibits discrimination of any kind and is dedicated to providing a work environment free of discrimination and harassment. The Firm follows an Equal Employment Opportunity Policy and Sexual Harassment / Unlawful Discrimination Policy, published in the Employee Handbook, which is distributed to all employees and is also available to all employees on the Firm's intranet website. This policy expressly provides that all "[e]mployment decisions will be made without regard to one's race, color, sex, gender identity or expression, religion, national origin, age, sexual orientation, disability, veteran status, marital status, citizenship status or any other basis prohibited by law." (See Equal Employment Opportunity Policy, attached hereto as Exhibit A.)

### B.    Bartoletti's Employment with the Firm

Bartoletti was originally hired by Citigroup in 1992. Bartoletti's career progressed and, in 2004, she became Director in the Housing Group. In 2007, she was one of three Directors in Housing – Bartoletti, Mike Koessel ("Koessel"), and the group head, Nick Fleuhr ("Fleuhr"). At that time, due to drastic changes in the housing market, management was evaluating the group's effectiveness and whether it had long-term viability. Indeed, the Housing Group had two primary areas of focus – State Housing Agencies and certain State Student Loan Issuers. Bartoletti focused on both student loan and housing clients, while Koessel exclusively covered housing clients. By 2008, the student loan business had become effectively non-existent because of problems in the credit markets that essentially eliminated the viability of auction rate securities which were the primary funding vehicles for those clients.

---

[2] Bartoletti's reliance on unsubstantiated statistics surrounding the November 2008 RIF cannot save her claim. The true facts clearly demonstrate that neither Bartoletti nor any other female employee was disproportionately impacted by the November 2008 RIF.

Morgan Lewis
COUNSELORS AT LAW

Rosa Vargas
June 23, 2009
Page 3

The Housing Group was significantly impacted by the RIFs that took place in 2007 and 2008. Indeed, in connection with the severe downturn in the housing market, the Housing Group was the least profitable group in Public Finance and management was considering disbanding the group in its entirety. After much discussion, management ultimately decided to keep a skeleton crew in place in Housing. As part of the downsizing in Housing, Citigroup terminated Fleuhr's employment, leaving the Housing Group without a Head. Bartoletti and Koessel were the only remaining Directors in the group and neither had significant management experience. As a result, in or around July 2008, they were named co-Heads of the Housing group.[3] Contrary to the allegations in Bartoletti's Charge, a Series 53 was not a regulatory requirement for that position.

C.    The November 2008 RIF And The Termination Of Bartoletti's Employment

Throughout 2007 and 2008, in the face of a severe, unprecedented and sustained downturn in the market, Citigroup underwent a significant restructuring. In connection with the restructuring, the Public Finance Department sought to achieve savings through multiple headcount reductions. Each time a reduction occurred, the heads of Public Finance analyzed the entire department and considered a variety of factors, including the reduction's overall effect on the existing business.

By November 2008, the heads of Public Finance decided to reduce the Housing Group to only one Director and two junior level employees. In assessing whose selection would have the least impact on the business, Brownstein noted that Koessel had stronger relationships with larger clients, had been making forward-thinking efforts to try to creatively reinvigorate the Housing Group's business during the financial crisis, and had more experience in the housing piece of the Housing Group's business. In contrast, Bartoletti had fewer relationships with large clients and her primary focus was on the student loan business, an area that was becoming extinct. Given the difference between Bartoletti and Koessel's total compensation and the fact that Koessel was entirely focused on the housing clients, it was more cost effective to have Koessel cover the business while management tried to ascertain whether the group had a future. Therefore, Brownstein recommended that Bartoletti be selected for the November 2008 RIF. On November 21, 2008, Brownstein and Frank Chin ("Chin"), the other co-Head of the Public Finance

---

[3] Bartoletti's allegations that Koessel was chosen as co-Head because he had a "personal friendship" with David Brownstein ("Brownstein"), Head of the Public Finance Department, is ludicrous and without merit. Even assuming, *arguendo*, that Brownstein's decision-making was motivated by a friendship with Koessel, the law is well-settled that favoritism or friendship do not imply discrimination. Scaria v. Rubin, 1996 WL 389250, at *11 (S.D.N.Y. July 11, 1996) ("Favoritism based on proven performance is surely a valid reason for promotion, and one that is used every day.") (internal quotations omitted), aff'd, 117 F.3d 652 (2d Cir. 1997); Rivera v. Nat'l Westminster Bank USA, 801 F. Supp. 1123, 1133 n.13 (S.D.N.Y. 1992) (favoritism based on friendship does not suggest discriminatory animus against a plaintff); Price v. Federal Express Corp., 2001 WL 46467, at *8 (S.D. Tex. Jan. 12, 2001) ("Favoritism does not imply racial discrimination.").



Rosa Vargas
June 23, 2009
Page 4

Department, informed Bartoletti of the decision.  Following Bartoletti's separation, Chin attempted to assist her in finding other work.

## II.   CONCLUSION

As set out and supported above, Bartoletti's discrimination claim is baseless.  The decision to terminate Bartoletti's employment was based on the legitimate business need to restructure the Public Finance Department while at the same time positioning the Housing Group to remain viable.  Bartoletti's selection for the November RIF was based on the conclusion that the student loan business had all but disappeared and Koessel had skills and relationships that would assist the Housing Group in acquiring new business and maintaining existing business.  Management was focused on ensuring the viability of the Housing Group and, therefore, made the reasonable and legitimate decision to retain Koessel over Bartoletti.  The fact that Bartoletti is a woman played no role in the decision.  Indeed, the fact that Brownstein and Chin chose Bartoletti as co-Head of the Housing Group belies any claim that they harbored discriminatory animus toward her.

Based on the foregoing, Citigroup respectfully submits that Bartoletti's Charge should be dismissed in its entirety and the Commission should issue a finding of "No Probable Cause." Please do not hesitate to contact me if you have any questions regarding the information set out above or if you require further information in connection with your investigation.

Very truly yours,

Kenneth J. Turnbull

Attachment

cc:  Christie Del Rey-Cone, Esq. (w/ attachment)

Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
Tel: 212.309.6000
Fax: 212.309.6001
www.morganlewis.com

# Morgan Lewis
COUNSELORS AT LAW

Kenneth J. Turnbull
Partner
212.309.6055
kturnbull@morganlewis.com

June 23, 2009

## VIA FACSIMILE AND FEDERAL EXPRESS

Rosa Vargas
Federal Investigator
U.S. Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street
New York, New York 10004-2112

Re:   Nadine Mentor v. Citigroup Inc., EEOC Charge No. 520-2009-01884

Dear Ms. Vargas:

We submit this position statement on behalf of Citigroup, Inc. ("Citigroup" or the "Firm") in response to the above-referenced Charge of discrimination filed by Nadine Mentor ("Mentor").[1] Mentor, a former Director in the Southeast Regional Group of Citigroup's Public Finance Department in the Municipal Securities Division, alleges that the decision to include her in a November 2008 Reduction-In-Force ("RIF") was the result of intentional sex discrimination in violation of Title VII of the Civil Rights Act of 1964.  As detailed below, Mentor's allegations of discrimination are wholly without merit.

The decision to terminate Mentor's employment in November 2008 had nothing to do with her gender.  Rather, Mentor was selected for the RIF because it was apparent that terminating her employment would have the least impact on the Southeast Regional Group's existing business.  Indeed, as of November 2008, Mentor had the least amount of developed business of any Director in the Southeast Regional Group.  This legitimate business reason had nothing whatsoever to do with the fact that Mentor is a female.  Mentor's claim is also vitiated by the fact

---

[1] This position statement is being provided to the Equal Employment Opportunity Commission ("EEOC" or the "Commission") on a confidential basis.  Citigroup respectfully requests, therefore, that it only be used for the purpose of the EEOC's investigation of the above charge and that it not be disclosed to any person or entity other than the Commission and its investigators.  Citigroup expressly reserves the right to assert additional defenses in the future as may be necessary or appropriate.

Morgan Lewis
COUNSELORS AT LAW

Rosa Vargas
June 23, 2009
Page 2

that the individual who concluded that terminating Mentor's employment would have the least impact on the group's existing business is the same individual that recruited, hired and promoted her. Finally, Mentor's assertion that she was chosen for termination solely because she is a female is further belied by the fact that in the three previous RIFs, she was not selected. Had Citigroup wished to terminate Mentor's employment because she is a woman, it could have done so much sooner.[2]

For these reasons, as more fully explained below, Mentor's Charge should be dismissed in its entirety.

## I.     FACTUAL BACKGROUND AND ANALYSIS

### A.     The Firm's Commitment To Equal Employment Opportunity

Citigroup is a leading provider of financial services, employing approximately 300,000 individuals worldwide in more than 100 countries and territories. The Firm is an equal opportunity employer that prohibits discrimination of any kind and is dedicated to providing a work environment free of discrimination and harassment. The Firm follows an Equal Employment Opportunity Policy and Sexual Harassment / Unlawful Discrimination Policy, published in the Employee Handbook, which is distributed to all employees and is also available to all employees on the Firm's intranet website. This policy expressly provides that all "[e]mployment decisions will be made without regard to one's race, color, sex, gender identity or expression, religion, national origin, age, sexual orientation, disability, veteran status, marital status, citizenship status or any other basis prohibited by law." (See Equal Employment Opportunity Policy, attached hereto as Exhibit A.)

### B.     Mentor's Employment With The Firm

On or about June 20, 2005, Mentor was hired by Citigroup as a Vice President in the Southeast Regional Group of the Public Finance Department in the Municipal Securities Division. Mentor was recruited to join the Firm by Norman Pellegrini ("Pellegrini"), with whom she had worked at UBS. Mentor displayed promise and abilities during her first two years of employment. Although she had not yet developed many clients, Pellegrini believed she had the ability to do so in the future and because of certain additional responsibilities she would be assuming, he recommended an out-of-cycle promotion of Mentor from Vice President to Director in January 2008.

---

[2] Mentor's reliance on unsubstantiated statistics surrounding the November 2008 RIF cannot save her claim. The true facts clearly demonstrate that neither Mentor nor any other female employee was disproportionately impacted by the November 2008 RIF.



Rosa Vargas
June 23, 2009
Page 3

Mentor complains that she did not receive a pay raise at the time of her promotion, and suggests that this was discriminatory.  No one who was promoted to Director or Managing Director in 2008 was eligible to receive a salary increase.  Indeed, pursuant to this policy, two men in Mentor's group who, like Mentor, were promoted in 2008, also did not receive salary increases with their promotions.[3]

### C.   The November 2008 RIF And The Termination Of Mentor's Employment

Throughout 2007 and 2008, in the face of a severe, unprecedented and sustained downturn in the market, Citigroup underwent a significant restructuring.  In connection with the restructuring, the Public Finance Department sought to achieve savings through multiple headcount reductions.  Each time a reduction occurred, the heads of Public Finance analyzed the entire department and considered a variety of factors, including the reduction's overall effect on the existing business.

When it became clear that the Public Finance group would undergo a RIF in November 2008, Pellegrini attempted to avoid having his Southeast Regional team impacted by the RIF.  Prior to November 2008, four individuals from the group had been terminated, and Pellegrini had tried to save additional costs by closing the group's Atlanta office.  Unfortunately, Pellegrini could not avoid the November RIF.

In preparing for the November 2008 RIF, Pellegrini was asked for information regarding who the Southeast Regional Group could afford to lose.  Pellegrini focused his efforts on who would be most critical to maintaining the group's developed business, identifying those team members who had solid client relationships which had already resulted in profit to the Firm.  Although Mentor was beginning to build business, and had shown potential in this area, Pellegrini determined that if the RIF impacted his group, eliminating Mentor's Director position would have the least impact on the group's existing developed business.  In fact, Mentor had less developed business than another Director, Brent Wilder, and he too was selected for the November 2008 RIF.

On November 21, 2008, Pellegrini informed Mentor that she had been selected for the November 2008 RIF.  Following Mentor's separation, Pellegrini has attempted to assist her in finding other work.

---

[3] A complainant must file a charge of discrimination with the EEOC within 300 days of the challenged conduct.  See Choi v. Chemical Bank, 939 F. Supp. 304, 310-11 (S.D.N.Y. 1996).  Claims premised on conduct that allegedly occurred prior to that 300 day period are time-barred and not actionable.  See id. (dismissing most of plaintiff's claims as time-barred because the alleged conduct occurred more than 300 days before the plaintiff filed EEOC charge); Cooper v. Wyeth Ayerst Lederle, 106 F. Supp. 2d 479 (S.D.N.Y. 2000) (same).  Here, Mentor filed her Charge on February 18, 2009.  Accordingly, any allegations that are premised upon acts or conduct which occurred prior to April 24, 2008, including her complaint about not receiving a raise along with her promotion, are time-barred.

Morgan Lewis
COUNSELORS AT LAW

Rosa Vargas
June 23, 2009
Page 4


II.     CONCLUSION

As set out and supported above, Mentor's discrimination claim is baseless.  The decision to
terminate Mentor's employment was based on the legitimate business need to restructure the
Public Finance Department while at the same time maintaining developed business within the
group.  Mentor's selection for the November RIF was based on Pellegrini's conclusion that she
had a small amount of business.  It was not based on her gender.  Indeed, the fact that Pellegrini
recruited, hired and promoted Mentor belies any claim that he harbored discriminatory animus
toward her.

Based on the foregoing, Citigroup respectfully submits that Mentor's Charge should be
dismissed in its entirety and the Commission should issue a finding of "No Probable Cause."
Please do not hesitate to contact me if you have any questions regarding the information set out
above or if you require further information in connection with your investigation.

Very truly yours,

Kenneth J. Turnbull

Attachment

cc:  Christie Del Rey-Cone, Esq. (w/ attachment)

Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
Tel: 212.309.6000
Fax: 212.309.6001
www.morganlewis.com

# Morgan Lewis
COUNSELORS AT LAW

Kenneth J. Turnbull
Partner
212.309.6055
kturnbull@morganlewis.com

June 23, 2009

**VIA FACSIMILE AND FEDERAL EXPRESS**

Rosa Vargas
Federal Investigator
U.S. Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street
New York, New York 10004-2112

Re:     Lisa Conley v. Citigroup Inc., EEOC Charge No. 520-2009-01885

Dear Ms. Vargas:

We submit this position statement on behalf of Citigroup, Inc. ("Citigroup" or the "Firm") in response to the above-referenced Charge of discrimination filed by Lisa Conley ("Conley").[1] Conley, a former Director in the Healthcare Group of Citigroup's Public Finance Department in the Municipal Securities Division, alleges that the decision to include her in a November 2008 Reduction-In-Force ("RIF") was the result of intentional sex discrimination in violation of Title VII of the Civil Rights Act of 1964. As detailed below, Conley's allegations of discrimination are wholly without merit.

The decision to terminate Conley's employment in November 2008 had nothing to do with her gender. Rather, Conley was selected for the RIF because she did not lead or originate busines for the Healthcare Group nor did she demonstrate a proficiency in developing new business. Moreover, Conley did not appear to be interested in professional development, which was taken very seriously by the Healthcare Group. These legitimate business reasons had nothing whatsoever to do with the fact that Conley is a female. Conley's assertion that she was chosen for termination solely because she is a female is further belied by the fact that in the three

---

[1] This position statement is being provided to the Equal Employment Opportunity Commission ("EEOC" or the "Commission") on a confidential basis. Citigroup respectfully requests, therefore, that it only be used for the purpose of the EEOC's investigation of the above charge and that it not be disclosed to any person or entity other than the Commission and its investigators. Citigroup expressly reserves the right to assert additional defenses in the future as may be necessary or appropriate.

Morgan Lewis
COUNSELORS AT LAW

Rosa Vargas
June 23, 2009
Page 2

previous RIFs, she was not selected.  Had Citigroup wished to terminate Conley's employment because she is a woman, it could have done so much sooner.[2]

For these reasons, as more fully explained below, Conley's Charge should be dismissed in its entirety.

## I.     FACTUAL BACKGROUND AND ANALYSIS

### A.     The Firm's Commitment To Equal Employment Opportunity

Citigroup is a leading provider of financial services, employing approximately 300,000 individuals worldwide in more than 100 countries and territories.  The Firm is an equal opportunity employer that prohibits discrimination of any kind and is dedicated to providing a work environment free of discrimination and harassment.  The Firm follows an Equal Employment Opportunity Policy and Sexual Harassment / Unlawful Discrimination Policy, published in the Employee Handbook, which is distributed to all employees and is also available to all employees on the Firm's intranet website.  This policy expressly provides that all "[e]mployment decisions will be made without regard to one's race, color, sex, gender identity or expression, religion, national origin, age, sexual orientation, disability, veteran status, marital status, citizenship status or any other basis prohibited by law." (See Equal Employment Opportunity Policy, attached hereto as Exhibit A.)

### B.     Conley's Employment With The Firm

Conley was originally hired by Citigroup in 1997 as an Assistant Vice President in the Public Finance Department.  Conley was promoted to Vice President in January 1999 and then to Director in January 2005.  The promotion to Director brought with it added responsibilities. Whereas an Assistant Vice President or Vice President could take a somewhat secondary role in the group's client relationships, as a Director, Conley was expected to become the primary interface between the Firm and its clients.  In addition, Conley was expected to lead teams and procure new business.  Conley, however, fell short in both areas and struggled in making the transition to Director.  In particular, when a client's main point of contact for the account was not available, Conley was not helpful in stepping in and trying to deal with the client's issue. Moreover, when provided with opportunities to spearhead professional development initiatives focused on networking efforts, Conley did not follow through.

---

[2] Conley's reliance on unsubstantiated statistics surrounding the November 2008 RIF cannot save her claim.  The true facts clearly demonstrate that neither Conley nor any other female employee was disproportionately impacted by the November 2008 RIF.

Rosa Vargas
June 23, 2009
Page 3

**Morgan Lewis**
COUNSELORS AT LAW

C.     The November 2008 RIF And The Termination Of Conley's Employment

Throughout 2007 and 2008, Citigroup underwent a significant restructuring in the face of a severe, unprecedented and sustained downturn in the market. In connection with the restructuring, the Public Finance Department sought to achieve savings through additional headcount reductions. Accordingly, the heads of Public Finance analyzed the entire department and considered a variety of factors including the reduction's overall effect on the business and anticipated trends and movement in the market.

By November 2008, the Healthcare Group had undergone two RIFs. In connection with the November 2008 RIF, the co-Heads of the Healthcare Group, David Cyganowski ("Cyganowski") and Fred Hessler ("Hessler"), assessed the skills, contributions and overall performance of the remaining employees in the group. Cyganowski and Hessler focused their analysis on an assessment of what moves could be made within the group that would have the least impact on existing business while allowing the group to successfully bring in new business going forward. In making this determination, they readily concluded that, unlike other Directors in the group, Conley did not drive business or revenue. Conley did not lead accounts and was not strong at stepping in when a client's main point of contact was unavailable. Moreover, other Directors had successfully become the lead or originating contacts for the group's clients, but Conley had not done so. Accordingly, Conley was selected for the November 2008 RIF along with a male Managing Director in the Healthcare Group.[3]

II.     **CONCLUSION**

As set out and supported above, Conley's discrimination claim is baseless. The decision to terminate Conley's employment was based on the legitimate business need to restructure the Public Finance Department and her inability to demonstrate that she possessed the skills required to expand the group's business and take the lead on client relationships. Conley's selection for the November RIF was based on Cyganowski's and Hessler's conclusion that terminating her employment would have the least impact on the group's business. It was not based on her gender.

Based on the foregoing, Citigroup respectfully submits that Conley's Charge should be dismissed in its entirety and the Commission should issue a finding of "No Probable Cause."

---

[3] Conley's allegation that "prior to [her] termination, [she] was the only woman among 10 directors in the Health Care Group" is misleading. Indeed, three of the *Managing* Directors in the Health Care Group are females. Moreover, the last two promotions made in the Healthcare Group were of women.



Morgan Lewis
COUNSELORS AT LAW

Rosa Vargas
June 23, 2009
Page 4

Please do not hesitate to contact me if you have any questions regarding the information set out above or if you require further information in connection with your investigation.

Very truly yours,

Kenneth J. Turnbull

Attachment

cc: Christie Del Rey-Cone, Esq. (w/ attachment)